UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X
ANNA STANCZYK,

                        Plaintiff,

        - against -

THE CITY OF NEW YORK,
P.O. RICHARD DeMARTINO, Shield No.
12739, P.O. SHAUN GROSSWEILER, "JOHN
DOE" #1-10 (the names "John Doe" being
fictitious, as the true names are presently
unknown), individually and in their official
capacities,
                      Defendants.

----------------------------------------------------------X

**MEMORANDUM AND ORDER**
Case No. 11-CV-0249 (FB) (RER)

*Appearances:*
*For the Plaintiff:*
JON L. NORINSBERG, ESQ.
Law Offices of Jon L. Norinsberg
225 Broadway Suite 2700
New York, NY 10007

*For the Defendants:*
MICHAEL A. CARDOZO
Corporation Counsel of the City of New York

RYAN G. SHAFFER
ANDREW P. WENZEL
100 Church Street, Room 3-217
New York, New York 10007

**BLOCK, Senior District Judge:**

**I**

On March 21, 2013, the jury returned a verdict finding defendant police officers Shaun Grossweiler and Richard DeMartino ("defendants") liable for the use of excessive force against plaintiff Anna Stanczyk during an altercation that began when they accused her of

failing to clean up after her dog.[1] The jury awarded Stanczyk $55,000 in compensatory damages and $2,000 in punitive damages against each defendant officer, for a total of $59,000. Plaintiff now moves for attorneys' fees and costs under 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d). Defendants have filed an application for costs pursuant to Federal Rule of Civil Procedure 68. As discussed below, both parties' motions are granted, with plaintiff's fee award being significantly less than requested because of defendants' Rule 68 offer of judgment, the questionable quality of her lead trial counsel's representation, and the limited degree of success she achieved.

II

A. **Rule 68 Offer of Judgment**

Federal Rule of Civil Procedure 54(d) directs courts to award costs to "the prevailing party." FED. R. CIV. P. 54(d). In a § 1983 action, these "costs" include attorneys' fees. 42 U.S.C. § 1988 ("In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."); *see also Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 97 (2d Cir. 1997) ("[A] plaintiff who has prevailed on a claim under § 1983 'should ordinarily recover an attorney's fee . . . .'" (citation omitted)). The jury's verdict makes Stanczyk the "prevailing party" under Rule 54(d) and § 1988. However, Rule 68 precludes

---

[1]Stanczyk filed this action on January 18, 2011, alleging violations of her constitutional rights under 42 U.S.C. § 1983 and a variety of state law causes of action. Trial commenced on March 12, 2013. Ultimately, Stanczyk's false arrest and excessive force claims were the only ones submitted to the jury.

2

recovery by a prevailing plaintiff, such as Stanczyk, of costs incurred after an offer of judgment is made if the judgment obtained is less than the unaccepted offer. *See* FED. R. CIV. P. 68(d); *see also Townsend v. Benjamin Enters.*, 679 F.3d 41, 58 (2d Cir. 2012) ("[A] prevailing plaintiff may not recover from the defendant attorney's fees and costs accrued after [service of the] Offer of Judgment."). In addition, Rule 68 requires that the plaintiff bear defendants' costs, excluding attorneys' fees, incurred after the offer date. *See* FED. R. CIV. P. 68(d)*; see also Lyons v. Cunningham*, 583 F. Supp. 1147, 1156 (S.D.N.Y. 2009) ("Rule 68 clearly indicates that plaintiffs must pay defendants' costs incurred after the offer of judgment."); *Hedru v. Metro North Commuter R.R.*, 433 F. Supp. 2d 358, 359-60 (S.D.N.Y. 2006) (same); *Boisson v. Banian Ltd.*, 221 F.R.D. 378, 382 (E.D.N.Y. 2004) (refusing to award defendants post-offer attorneys' fees). As the Supreme Court has recognized, "application of Rule 68 [] require[s] plaintiffs to 'think very hard' about whether continued litigation is worthwhile . . . ." *Marek v. Chesny*, 473 U.S. 1, 9 (1985).

On December 11, 2011, counsel for defendants served upon plaintiff the following Rule 68 Offer of Judgment ("the Offer"):

> Pursuant to Rule 68 of the Federal Rules of Civil Procedure, defendant City of New York hereby offers to allow plaintiff Anna Stanczyk to take a judgment against it in this action for the total sum of One Hundred Fifty Thousand and One ($150,001.00) Dollars, plus reasonable attorneys' fees, expenses and costs to the date of this offer for plaintiff's federal claims.
>
> This judgment shall be in full satisfaction of all federal and state law claims or rights that plaintiff may have to damages, or any other form of relief, arising out of the alleged acts or omissions of defendants City of New York, Richard DeMartino, Shaun Grossweil[]er, or any official, employee, or agent, either past or

3

> present, of the City of New York, or any agency thereof in connection with the facts and circumstances that are the subject of this action. . . .
>
> This offer of judgment is made for the purposes specified in Rule 68 of the Federal Rules of Civil Procedure and is not to be construed as an admission of liability by any defendants, or any official, employee or agent of the City of New York, or any agency thereof; nor is it an admission that plaintiff has suffered any damages.
>
> Acceptance of this offer of judgment will act to release and discharge defendants the City of New York, Richard DeMartino and Shaun Grossweil[]er; their successors or assigns; and all past and present officials, employees, representatives and agents of the City of New York, or any agency thereof, from any and all claims that were or could have been alleged by plaintiff in the above-referenced action. . . .

Shaffer Decl. Ex. B [Rule 68 Offer of Judgment]. Stanczyk did not accept the Offer, and she does not dispute that it exceeded the judgment. She asserts, however, that Rule 68 does not bar her recovery of costs incurred after December 11, 2011 because the Offer applied only to the City of New York, and thus defendant officers remain liable for her post-Offer costs.

This argument is misplaced—the Offer clearly applied to all defendants. While it provided for judgment to be taken against the City, it required Stanczyk to "release and discharge defendants the City of New York, Richard DeMartino and Shaun Grossweil[]er . . . from any and all claims that were or could have been alleged by [Stanczyk] in the [] action." The Offer also stated that the judgment would be in "full satisfaction of all federal and state law claims or rights that [Stanczyk] may have to damages . . . arising out of the alleged acts or omissions of defendants City of New York, Richard DeMartino, [and] Shaun Grossweil[]er." Furthermore, the Offer repeatedly referred to "defendants," and was

4

submitted by Corporation Counsel of New York bearing the signature: "Attorney for Defendants City, Richard DeMartino and Shaun Grossweil[]er."  Because there is no reasonable basis to conclude that the Offer pertained solely to the City, it prevents Stanczyk's recovery of costs incurred after the Offer and requires that she pay defendants' post-Offer costs.

**B.    Plaintiff's Attorneys' Fees and Other Costs**

Using December 11, 2011 as the appropriate cut-off date, the Court now fixes plaintiff's attorneys' fees under § 1988 and plaintiff's other costs.

**1.    Attorneys' Fee**s

In calculating an award of attorneys' fees under § 1988, district courts are directed to first determine "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—[which] creates a 'presumptively reasonable fee.'"  *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). The reasonable hourly rate reflects factors including the complexity of the case and the quality of counsel's representation.  *See Arbor Hill*, 522 F.3d at 190 (determination of the reasonable hourly rate includes consideration of "the novelty and difficulty" of the case)  (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Millea,* 658 F.3d at 168-69 ("[C]onsiderations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.").  Moreover, the lodestar amount may be reduced to reflect the degree of success plaintiff achieved.  *See Hensley v. Eckerhart*, 461 U.S.

424, 435 (1983) (finding that a fee award may require reduction where a plaintiff "has achieved only partial or limited success"); *see also G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 428 (S.D.N.Y. 2012) ("[C]ourts may make adjustments to the presumptively reasonable fee based on [] the degree of success obtained by the prevailing party."); *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010) (recognizing that "courts have been adjusting the 'presumptively reasonable fee' for traditional factors such as the degree of the plaintiff's success" (collecting cases)).

a. **Reasonable Hourly Rate**

Plaintiff requests an attorneys' fee award reflecting the following hourly rates: Jon Norinsberg—$450; Eugene Bellin—$475; John Balestriere—$425; Alex Umansky—$175; paralegal Nicole Burstyn—$125; Balestriere Law Firm paralegals—$100.

In "setting a reasonable hourly rate," a district court should determine "what rate a paying client would be willing to pay . . . bear[ing] in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees." *Arbor Hill*, 522 F.3d at 190. Notwithstanding defendants' arguments to the contrary, counsels' requested hourly rates are consistent with prevailing rates in this district for attorneys of similar experience and skill.[2] *See, e.g., Ferrara v. CMR*

---

[2]"To determine the currently prevailing reasonable rate, courts look first to the lawyer's level of experience." *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 475 (S.D.N.Y. 2009). Norinsberg is a seasoned civil rights litigator with over 20 years of experience. During this career, he has successfully litigated over 200 § 1983 cases. Bellin is another experienced civil rights attorney who has been practicing for 43 years, and much of his work has also involved § 1983 claims. Balestriere has been an attorney for 15 years, having worked in both the State Attorney General's Office and Manhattan District Attorney's Office. Finally, Umansky has been practicing law for

6

*Contracting LLC*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012) ("In recent years, courts in this district have approved hourly fee rates in the range of $200 to $450 for partners, $100 to $300 for associates and $70 to $100 for paralegal assistants." (citing *Carco Grp, Inc. v. Maconachy*, 2011 WL 6012426, at *3 (E.D.N.Y. Dec. 1, 2011) (collecting cases))); *Toussie v. Cnty. of Suffolk*, 2011 WL 2173870, at *2 (E.D.N.Y. May 31, 2011) (awarding $450/hour to an attorney with 34 years of experience); *GMG Transwest Corp. v. PDK Labs., Inc.*, 2010 U.S. Dist. LEXIS 108581, at *4 (E.D.N.Y. Oct. 12, 2010) (awarding $450/hour to an attorney with 40 years of experience, and $400/hour to an attorney with 7 years of experience); *Rodriguez v. Pressler & Pressler LLP*, 2009 WL 689056, at *1 (E.D.N.Y. Mar. 16, 2009) (awarding $450/hour to a "civil rights lawyer with 17 years of experience"). Accordingly, the Court awards Bellin, Balestriere, Umansky, Burstyn, and the Balestriere paralegals their requested hourly rates.[3]

However, the hourly rate for Norinsberg—as lead trial counsel responsible for the strategy and overall direction of Stanczyk's case—requires a downward adjustment. First, this was a relatively straightforward § 1983 matter that did not pose any novel or complex questions of law. While plaintiff alleged multiple theories of liability, all of her claims were premised upon a single continuous incident of limited duration. The case was submitted to the jury after four days.

More importantly, Stanczyk's outcome was adversely impacted due to the poor quality of Norinsberg's representation. In order to properly assess this factor, the Court

---

over two years, and much of his work has been devoted to § 1983 cases.

[3]While recognizing that Bellin's rate exceeds that customarily awarded for similarly experienced attorneys in the district, the Court will not quibble with his rate given the limited nature of Bellin's participation in Stanczyk's case.

briefly recounts the essential facts presented during trial. First, the evidence established that Stanczyk was handcuffed, placed into the back seat of defendants' patrol car, then repeatedly punched in the face and chest by Officer DeMartino. Stanczyk testified that while she was in the back seat of the car, Officer Grossweiler repeatedly slammed the car door on her legs. As was observable to anyone in the courtroom, Stanczyk is a diminutive older woman, while the officers were significantly larger and many years younger. The events that transpired during the incident were so disturbing that eyewitnesses stopped to observe what was occurring.

Norinsberg introduced multiple color photos showing numerous dark bruises on Stanczyk's face and chest, purportedly taken shortly after the altercation. He likewise presented testimony from Stanczyk and four medical experts concerning her injuries, which included knee damage involving extensive bone bruising, large joint diffusion, and a medial meniscal tear; post-traumatic stress disorder ("PTSD"); major depressive disorder; and anxiety disorder. The experts collectively testified that Stanczyk's injuries required treatment involving an MRI, surgery, physical therapy, and psychological therapy, and that she would require future medical treatment. For example, Dr. Urban testified that he performed arthroscopic surgery on Stanczyk's right knee joint, and that ten months after the surgery she required anti-inflammatories and physical therapy. Dr. Malinowska testified that she met with Stanczyk 51 times over the past two years for injuries relating to PTSD and depression, and planned to continue similar treatment in the future. Dr. Knight testified that Stanczyk continued to require bi-weekly therapy in order to treat PTSD and depression resulting from the incident.

Accordingly, there was ample evidence of Stanczyk's physical and mental

8

injuries to support substantial compensatory and punitive damages.

The inadequacy of the awards may well have been due to Norinsberg's failure to provide the jury with any monetary semblance of guidance. As the Second Circuit has stated, "[a] plaintiff is not permitted to throw himself on the generosity of the jury. If he wants damages, he must prove them." *Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108, 119 (2d Cir. 2004) (internal citation and quotation marks omitted). While the medical witnesses testified as to Stanczyk's past and future medical needs, Norinsberg did not present any medical bills or testimony regarding their costs. *See Matthews v. City of New York*, 2006 WL 842392, at *9-10 (E.D.N.Y. Mar. 27, 2006) (finding jury's $3500 damages award "unsupported by the evidence" where plaintiff's $354 ambulance bill was the sole piece of evidence introduced relating to economic damages). During trial, the Court alerted Norinsberg to this failure, stating that there was not "any evidence [regarding] the cost of [treatment] . . . There's not a shred of evidence in here, other than she will have some continuing cost. But it's speculative as to what that cost will be." Tr. Mar. 18, 2013 at 196-97.

The failure of Norinsberg to attach a dollar value to Stanczyk's medical needs was compounded by his summation:

> Now, you're also going to see damages questions [on the verdict form]. Evaluating compensation and damages. I'll tell you right now, this is not my favorite part of talking to you, and I'll tell you why. The minute you start talking about damages, oh, that's what this case is about. The greedy plaintiff, the greedy plaintiff's lawyer. I'm going to tell you right now, we're not going to be throwing numbers out. You're going to make that call. . . . I don't want to start throwing out numbers because I don't want to taint this lawsuit. We have bigger pictures. We have a bigger goal here, which I'll talk about on the punitive damages claim. . . . When it comes to numbers and compensation, whatever you folks—you determine the numbers. Whatever you determine,

9

> we'll live with it. Because if eight people say it's fair, it's fair, okay. I don't want to taint this.

Tr. Mar. 19, 2013 at 118-20. Norinsberg could have requested the Court's permission to suggest some dollar amounts. If he had done so, the Court—as is its practice—would have allowed him to do so. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997) ("[The decision whether to permit counsel to] suggest[] a specific sum as damages . . . is best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations."). In sum, given the absence of any testimony or evidence as to the costs of Stanczyk's past and future medical needs, coupled with Norinsberg's *laissez-faire* summation, the jury was bereft of any guidance to assist it in determining appropriate damages.

Furthermore, the quality of Norinsberg's post-verdict representation has also adversely impacted plaintiff's case. Immediately after the jury rendered its verdict, Norinsberg stated that he would be moving for a new trial solely on the issue of damages because the damages awards were "insufficient." Tr. Mar. 21, 2013 at 16. Accordingly, the Court set a briefing schedule. However, five days later Norinsberg asked the Court to enter judgment, opting instead to directly appeal to the Second Circuit Court of Appeals.[4]

Norinsberg's decision to bypass the district court now significantly hampers plaintiff's ability to obtain higher damages. Where "a party has not attacked the adequacy of a verdict in a motion for judgment as a matter of law or for a new trial," the Second Circuit

---

[4] Presumably counsel would not have chosen to file the current fee application but for the requirement that a prevailing party file a motion for costs "no later than 14 days after the entry of judgment." FED. R. CIV. P. 54(d)(2)(B)(i).

10

has repeatedly indicated its refusal to review challenges to the adequacy of a jury's damages award except for those limited circumstances where "a verdict offends fundamental conceptions of allowable damages [] or presents so plain an error that it should be entertained in order to prevent a miscarriage of justice." *Zinman v. Black & Decker*, 983 F.2d 431, 437 (2d Cir. 1993) (finding no plain error and, accordingly, that plaintiff "waived any right to challenge the adequacy of the jury's award" (citations and internal quotation marks omitted)); *see also Vaught v. Childs Co.*, 277 F.2d 516, 518 (2d Cir. 1960) (holding that rather than directly appealing the verdict, appellant should have first filed a motion with the district court for a new trial or to set aside the verdict, which would have permitted the trial court to have "passed upon th[e] point . . . in [] light of all the facts then recently before it"; affirming the judgment due to appellant's failure to file such a motion).

Federal Rule of Civil Procedure 59, however, permits a trial court to set aside a jury's damages award based upon consideration of "awards in similar cases." *See* FED. R. CIV. P. 59; *Perdue v. City Univ. of New York*, 13 F. Supp. 2d 326, 337 (E.D.N.Y. 1998) (citing *Lee v. Edwards*, 101 F.3d 805, 805 (2d Cir. 1996)); *see also Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990) ("Reference to other awards in similar cases is proper."); *Candelaria v. Coughlin*, 181 F.R.D. 278, 282 (S.D.N.Y. 1998) (stating the same and denying plaintiff's motion for a new trial on the basis of inadequate punitive damages).[5]

---

[5]Although there are many instances where courts have set aside a jury's compensatory damages award as inadequate, *see, e.g.*, *Raysor v. Port Auth. of New York & New Jersey*, 768 F.2d 34, 39 (2d Cir. 1985), the Court is not aware of any case where a new trial was granted because of inadequate punitive damages. *See Brink's Inc. v. City of New York*, 546 F. Supp. 403, 413 (S.D.N.Y. 1982) (noting that juries are "vested with a broad discretion in assessing punitive damages.").

At the conclusion of trial, the Court acknowledged that the damages awards were significantly smaller than plaintiff might have hoped. Given the Court's overall experience and knowledge concerning compensatory damage awards in similar cases, there existed a significant likelihood that it might have been receptive to plaintiff's related post-trial briefing. *See, e.g.*, *Tookes v. Port Auth.*, 2011 WL 3555813, at *4 (E.D.N.Y. Aug. 11, 2011) (Block, J.) (granting plaintiff's motion for a new trial based upon review of comparable compensatory damage award cases awarding higher amounts for similar injuries). However, given Norinsberg's decision not to file a motion challenging the adequacy of the jury's award, the Court had no opportunity to decide whether the damages were inadequate, and counsel has severely limited the prospect of having the Second Circuit set them aside. Norinsberg's requested hourly rate "fails to provide a reasonable fee for the quality of representation provided," *Blum v. Stenson*, 465 U.S. 886, 900 (1984), and his hourly rate is reduced to $350.[6]

**b.     Time Reasonably Expended**

The Court has determined that counsel reasonably expended 59.7 hours of time prior to the Offer date. Counsels' submitted billing records easily meet their burden, as the records contain well-documented and detailed explanations of the work performed. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) (holding fee applications must be supported by contemporaneous time records that "specify, for each

---

[6]During trial, plaintiff's counsel also made a number of non-meritorious mistrial motions which further call into question the quality of his representation. For example, counsel repeatedly objected to the admission of evidence relating to plaintiff's mental condition before the incident—evidence which was admissible given that plaintiff's prior mental state was directly at issue in the case. *See* FED. R. EVID. 401 ("Evidence is relevant if [] it has any tendency to make a fact more or less probable than it would be without the evidence; and [] the fact is of consequence in determining the action.").

attorney, the date, the hours expended, and the nature of the work done"); *Luca v. Cnty. of Nassau*, 698 F. Supp. 2d 296, 301 (E.D.N.Y. 2010) ("A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed.").

Defendants take issue only with 7.9 hours of counsels' pre-Offer time, asserting that this should be excluded because it "relate[s] exclusively to plaintiff's state law causes of action." The argument is misplaced. First, Stanczyk's state-law claims were based upon the same events giving rise to her federal claims. *See Tucker v. City of New York*, 704 F. Supp. 2d 347, 358 (S.D.N.Y. 2010) ("[I]f a plaintiff prevails on a claim that generates a fee award, [s]he may recover for work done on other claims if they were substantially related to the claim on which [s]he prevailed." (citation omitted)). "Moreover, the assertion of [plaintiff's] state-law claims . . . can fairly be viewed as a reasonable strategy by counsel for maximizing the likelihood of a successful outcome . . . ." *Id.* (finding that inclusion of plaintiff's state law claims in the complaint "potentially increased plaintiff's bargaining leverage in seeking to resolve the entire suit"). Thus, "the work done in state court and at the 50–h hearing to preserve plaintiff's state-law claims was reasonably calculated to improve the prospects for [her] federal claims, at least by way of a future settlement." *Id.* This finding "in itself suffices to justify awarding [Stanczyk] reasonable fees for that effort." *Id.*

Based upon the foregoing, the presumptively reasonable fee is $18,597.50, calculated as follows:

|  | **Hourly Rate** | **Hours (Pre-Offer)** | **Total** |
|---|---|---|---|
| Jon L. Norinsberg | $350 | 43.8 | $15,330 |
| John Balestriere | $425 | 2.4 | $1,020 |

13

| Eugene M. Bellin | $475 | 2.2 | $1,045 |
| Alex Umansky | $175 | 0.0 | $0 |
| Nicole Burstyn | $125 | 2.9 | $362.50 |
| Balestriere paralegals | $100 | 8.4 | $840 |
| **Total** | | **59.7** | **$18,597.50** |

c.     **Degree of Success Obtained**

Having determined the presumptively reasonable fee, the final attorneys' fee award should be adjusted to reflect Stanczyk's limited degree of success. *See Hensley*, 461 U.S. at 435 (holding that a fee award may require reduction where a plaintiff "has achieved only partial or limited success").

As recognized by the Second Circuit, "the most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (citations and quotation marks omitted) ("Both 'the quantity and quality of relief obtained,' as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved."); *see also Hensley*, 461 U.S. at 436 ("There is no precise rule or formula" for adjusting the lodestar to account for limited success). "Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citation omitted).

The main objective of Stanczyk's lawsuit was the recovery of punitive damages,

in order to punish defendant officers and deter similar future conduct. Norinsberg stated during his summation: "We have a bigger goal here, which I'll talk about on the punitive damages claim . . . The larger objective in this lawsuit is punitive damages. . . . Punitive damages is to punish. The main goal is to punish, but the other point is to deter." *See* Tr. Mar. 19, 2013 at 120-22. Plaintiff's complaint sought $2,000,000 in compensatory damages and $1,000,000 in punitive damages. It is doubtful that the $2,000 punitive damages awards against each officer will be sufficient to achieve either of plaintiff's twin goals of punishment and deterrence. *See, e.g., Weyant v. Okst*, 182 F.3d 902, at *3 (2d Cir. 1999) (characterizing $2,500 punitive damages award as "small . . . as compared to the [$75,000] award of compensatory damages"); *Kahn v. Hip Centralized Lab. Servs.*, 2008 WL 4283348, at *6 (E.D.N.Y. Sept. 17, 2008) (striking $11,000 punitive damages award from jury's verdict because it represented "a relatively small sum in comparison to the $200,000 award for emotional damages," suggesting "that the jury . . . did not find [the defendant's conduct] to be wholly outrageous"). Similarly, Stanczyk's $55,000 compensatory damages award pales in comparison to the amount sought in her complaint. These awards therefore indicate that Stanczyk achieved only a limited degree of success.[7] Counsel is awarded $16,523.75 in attorneys' fees, representing a reduction of the presumptively reasonable fee by the percentage of hours counsel worked prior to the Offer as compared to the case as a whole.

## 2. Plaintiff's Costs

---

[7]The Court is mindful that although it may reduce counsels' fee to account for Stanczyk's limited degree of success, the fee should not be reduced merely because it "would be disproportionate to the financial interest at stake in the litigation." *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d. Cir. 2005).

In assessing plaintiff's costs, "[t]he Second Circuit has held that reasonable out-of-pocket disbursements ordinarily charged to clients are recoverable." *Thorsen v. Cnty. of Nassau*, 2011 WL 1004862, at *6 (E.D.N.Y. Mar. 17, 2011); *see also U.S. Football League v. Nat'l Football*, 887 F.2d 408, 416 (2d Cir. 1989). "[E]xpenditures for filing fees, process servers, subpoena/witness fees, and transcripts are routinely recoverable . . . ." *Thorsen*, 2011 WL 1004862, at *6; *see also Kuzma v. IRS*, 821 F.2d 930, 933-34 (2d Cir. 1987) ("Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 . . . .").

Plaintiff is entitled to $2,313.70 in pre-Offer costs as follows:

| Filing Fee | $350 |
|---|---|
| Subpoena/Witness Procurement Fees | $1080.71 |
| Copying of Plaintiff's Medical Records | $323.25 |
| Photocopying/Duplication | $222.74 |
| Travel | $337 |
| **Total** | **$2,313.70** |

The Court has excluded those costs related to retaining experts Marcia Knight and Randall Ehrlich. *See W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 102 (1991) (holding that 42 U.S.C. § 1988 does not convey the authority to shift expert fees to the losing party as part of a 'reasonable attorney's fee' in a § 1983 case); *see also Boisson*, 221 F.R.D. at 379 ("Fees for expert witnesses are taxable only to the same extent as ordinary witness fees."). Likewise, plaintiff is not entitled to fees relating to the testimony of doctors Knight, Urban, and Malinowska because their testimony occurred after the Offer.

**C.      Defendants' Motion for Costs**

Under Rule 68, defendants are entitled to $1,186.20 in post-Offer costs as follows:

| Deposition Transcript | $902.45 |
|---|---|
| Copying of Plaintiff's Medical Records | $223.75 |
| Witness Fee | $40 |
| Docket Fee | $20 |
| **Total** | **$1,186.20** |

While they may receive payment for costs relating to their experts' deposition appearances, defendants may not recover for the costs of Dr. Ramesh Gidumal's deposition attendance because he did not testify at trial nor was his deposition testimony used or received into evidence. *See* Local Rule 54.1(c)(2); *In re Omeprazole Patent Litig.*, 2012 WL 5427849, at *6 (S.D.N.Y. Nov. 7, 2012) (requiring that witnesses' depositions be introduced at trial in order to award costs relating to witnesses' deposition attendance). For this same reason, defendants are not entitled to costs incurred in creating the videotaped deposition of Dr. Gidumal. *See Boisson*, 221 F.R.D. at 380 ("[T]he cost of deposition transcripts are properly taxed as costs only where such [testimony] [is] obtained for use at trial and not solely for discovery purposes and the convenience of counsel."). However, defendants may recover for those costs incurred in obtaining Stanczyk's deposition transcript, as they utilized this testimony extensively at trial.

Defendants have been awarded costs for charges incurred in obtaining certified copies of plaintiff's medical records from Belle Harbor Physical Therapy and Long Island Radiology Associates, P.C. The Court is satisfied that these copies were "necessarily obtained for use in the case," such that they are properly awardable. 28 U.S.C. § 1920; *see also Karmel v. City of New York*, 2008 WL 216929, at *3 (S.D.N.Y. Jan. 9, 2008) (awarding defendants costs

associated with obtaining plaintiff's medical records where those records were "admitted into evidence or otherwise used at trial").

Because defendants have not sufficiently demonstrated that the daily trial transcripts they ordered were "necessarily obtained" for use at trial, they are not entitled to recovery of these costs. *See Karmel,* 2008 WL 216929, at *3 ("The trial in the present case was not overly long or complicated, and Defendants had at least two attorneys present at all times during the trial, one of whom could have been taking sufficient enough notes during the proceedings to make daily trial transcripts unnecessary."); *see also John & Kathyn G. v. Bd. of Educ. of Mt. Vernon Pub. Schs.*, 891 F. Supp. 122, 123 (S.D.N.Y. 1999) ("Daily transcripts of trial testimony are not customary."). Finally, defendants are not entitled to payment for investigative services provided by E.R. Quinn Co., as these services were rendered prior to the Offer date.

### III

Plaintiff's Motion for Attorneys' Fees and Costs is granted to the extent that plaintiff is awarded $18,837.45 in fees and costs. Defendants' Application for Costs is likewise granted, and defendants are awarded $1,186.20 in costs.

**SO ORDERED.**

                                                     /S/ Frederic Block  
                                                   FREDERIC BLOCK  
                                                   Senior United States District Judge

Brooklyn, New York  
June 21, 2013